Jeffrey M. Lenkov (State Bar No. 156478)
  *jml@manningllp.com*
Steven J. Renick (State Bar No. 101255)
  *sjr@manningllp.com*
Steven C. Amundson (State Bar No. 218507)
  *sca@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant
USA WATER POLO, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ALICE MAYALL, as parent and guardian of minor H.C., on behalf of H.C. and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USA WATER POLO, INC.,<br><br>Defendant. | Case No. 8:15-cv-00171-AG-(KESx)<br><br>**REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: September 14, 2015<br>Time: 10:00 A.M.<br>Crtrm.: 10D |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 1. | NONE OF THE DEFENDANT'S ARGUMENTS HAVE BEEN WAIVED | 1 |
| 2. | THE PLAINTIFF'S ALLEGATIONS ARE NOT SUFFICIENT TO CONFER STANDING ON HER TO SEEK CERTAIN OF THE INJUNCTIVE RELIEF SHE HAS REQUESTED | 1 |
| 3. | IN LIGHT OF THE PRIMARY ASSUMPTION OF RISK DOCTRINE, THE PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO SHOW THAT THE DEFENDANT BREACHED ANY DUTY IT LEGALLY OWED TO THE PLAINTIFF | 4 |
| 4. | THE PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANT SPECIFICALLY ASSUMED THE DUTY IDENTIFIED BY THE PLAINTIFF, AND ACCORDINGLY THE SECOND COUNT OF THE FIRST AMENDED COMPLAINT MUST FAIL | 10 |
| 5. | THE PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANT'S ALLEGEDLY MISCONDUCT RISES TO THE LEVEL OF GROSS NEGLIGENCE | 10 |
| 6. | CONCLUSION | 11 |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Artiglio v. Corning Inc.,* 18 Cal.4th 604, 614-615 (1998) .......................................... 10

*Beninati v. Black Rock City, LLC,* 175 Cal.App.4th 650, 661 (2009) ......................... 9

*Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006) ............................................... 2

*Kahn v. East Side Union High School Dist.,* 31 Cal.4th 990, 996-997 (2003) ........... 8

*Lewis v. Mammoth Mt. Ski Area,* 2009 U.S. Dist. LEXIS 13050, 2009 WL 426595 (E.D. Cal. Feb. 19, 2009) .................................................................... 11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) ........................................... 3

*Mayfield v. United States,* 599 F.3d 964, 970 (9th Cir. 2010 ....................................... 1

*Morgan v. Fuji Country USA, Inc.,* 34 Cal.App.4th 127 (1995) .................................. 9

*Nalwa v. Cedar Fair, L.P.,* 55 Cal.4th 1148, 1156 (2012) .................................. 7, 8, 9

*Onyshko v. National Collegiate Athletic Association,* No. 13-cv-01791, ECF No. 11 at 13 (W.D. Pa. May 28, 2014) ................................................................ 8

*Saffro v. Elite Racing, Inc.,* 98 Cal.App.4th 173 (2002) .............................................. 8

*Wattenbarger v. Cincinnati Reds, Inc.,* 28 Cal.App.4th 746 (1994) ........................... 6

*Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) ....................................................... 3

Defendant USA Water Polo, Inc. submits the following memorandum of points and authorities in reply to the Plaintiff's Opposition to Defendant USA Water Polo, Inc.'s Motion to Dismiss First Amended Class Action Complaint.

### 1. NONE OF THE DEFENDANT'S ARGUMENTS HAVE BEEN WAIVED

The plaintiff argues at several points in her opposition that, pursuant to Federal Rules of Civil Procedure rule 12(g)(2) the defendant has waived certain arguments because they were not made in the defendant's motion to dismiss the original complaint. The plaintiff's interpretation of the rule is without merit.

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." As Rule 12(h) makes clear, what Rule 12(g)(2) is referring to are the defenses listed in Rule 12(b) (and arguably the remainder of Rule 12), not the arguments offered by the defendant in support of those defenses. The plaintiff has not cited to any case law – because none exists – that would even suggest that a defendant is precluded from raising new arguments in support of a second Rule 12(b)(6) motion in addition to the arguments made in support of the initial Rule 12(b)(6) motion. So none of the arguments presented by the defendant in support of its current motion to dismiss have been waived.

### 2. THE PLAINTIFF'S ALLEGATIONS ARE NOT SUFFICIENT TO CONFER STANDING ON HER TO SEEK CERTAIN OF THE INJUNCTIVE RELIEF SHE HAS REQUESTED

As the defendant explained in its moving papers (at page 6), the case law provides that even if "a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or immediate threat ... that he will again be wronged in a similar way.'" *Mayfield v. United States,* 599 F.3d 964, 970 (9th Cir. 2010). Plaintiffs "must demonstrate that they are realistically threatened by a

repetition of the violation." *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006); emphasis, citations, and internal quotation marks omitted.

The defendant noted that all of the injunctive relief requested by the plaintiff, other than her demand for medical monitoring, is prospective and will only effect persons playing water polo in the future. The defendant then argued that, although the First Amended Complaint contains allegations that plaintiff H.C. is currently playing water polo (see paragraphs 138 and 157), that alone is not sufficient to demonstrate that the plaintiff is ***"realistically*** threatened by a repetition of the violation" or that she faces a "real or immediate threat" that she "will again be wronged in a similar way." The defendant argued that, to the contrary, the allegations set out in the First Amended Complaint indicate that the plaintiff is incapable of playing organized competitive water polo. Further, there are no allegations even suggesting that if the plaintiff is indeed playing water polo, it is for any team or in any competition in any way associated with the defendant. The plaintiff has not refuted any of this.

The plaintiff first asserts that since she has alleged that she is playing water polo (although it is very notable that the plaintiff does not offer any details whatsoever about this supposed current participation in the sport), it is "a reasonable and plausible inference from the Complaint that Plaintiff, only 16 years old, will continue her participation in water polo." Opposition, page 8, lines 21-23. It is hard to reconcile that "inference" with the plaintiff's explicit allegation that she is ***currently*** suffering

> "from an assortment of problems associated with injuries, including, but not limited to, post-concussion syndrome, as well as such symptoms as headaches, loss of memory, academic impairment, excessive sleepiness, anxiety, cognitive dysfunction, limitations in physical activities, social isolation, and loss of the pleasures of life, among other things."

First Amended Complaint, paragraph 20.

It isn't enough for the plaintiff to simply present the bare possibility that she

2
**REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

might, under the right set of circumstances, suffer the sort of injury that might be addressed by the injunctive relief she is seeking. Rather, she must show that she is *"realistically* threatened" and that the threat is imminent. The mere assertion that the plaintiff is playing water polo does not even come close to meeting that standard.

Further, the plaintiff writes that "[o]ne such plausible scenario would be in the event that USA Water Polo implements the internationally-accepted concussion policies and rules sought by this lawsuit." Opposition, page 8, lines 23-25. The only way to interpret this statement is that the plaintiff will *resume* her participation in water polo activities under the supervision of the defendant if – but only if – the defendant enacts the changes being insisted upon by the plaintiff in this lawsuit. But that necessarily means that if the plaintiff is in fact currently playing water polo, she *isn't* doing it in any venue over which the defendant has any control. But in that case the plaintiff has failed to make the required showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" – *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992), citation and internal quotation marks omitted – i.e. the issuance of an injunction against defendant USA Water Polo, Inc.

The plaintiff argues that "the court's decision in *Mehr* regarding standing is clearly distinguishable", focusing on the differences in the playing history of the plaintiffs in that case and the plaintiff in this case. Opposition, page 9, lines 23-24. But what is exactly the same in this case and in *Mehr* is that there is no *"imminent* danger of injury." *Mehr* Order at page 23, line 28, emphasis added; copy attached as Exhibit 2 to the defendant's Request for Judicial Notice in Support of Motion to Dismiss First Amended Class Action Complaint. The *Mehr* order cites to the decision in *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990), in which the Supreme Court explicitly held that "[a]llegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be *certainly impending* to

3
REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

constitute injury in fact." Emphasis added; citations and internal quotation marks omitted.

There is simply nothing in the First Amended Complaint to even suggest that the plaintiff is in "imminent danger" of suffering any of the potential injuries that would allegedly be alleviated by the requested injunctive relief, or that such injury to the plaintiff is "certainly impending". Under these circumstances, the plaintiff has not shown that she has standing to seek this portion of the injunctive relief she has requested, and accordingly that claim should be dismissed.

### 3.  IN LIGHT OF THE PRIMARY ASSUMPTION OF RISK DOCTRINE, THE PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO SHOW THAT THE DEFENDANT BREACHED ANY DUTY IT LEGALLY OWED TO THE PLAINTIFF

The plaintiff asserts in her opposition to the defendant's motion to dismiss that the defendant "has a duty to Plaintiff and the Class to take reasonable steps to protect players from concussions and to adopt post-concussion protocols to limit the damage from concussions." Opposition, page 11, lines 6-7. However, since the plaintiff acknowledges that "[t]his case is not about preventing an initial concussion" – Opposition, page 11, line 1 – it appears that what the plaintiff meant when she asserted that the defendant had a duty "to take reasonable steps to protect players from concussions" was that the defendant allegedly had a duty "to recognize, manage and appropriately treat head injuries and concussions." First Amended Complaint, paragraph 5. So the plaintiff is essentially asserting the existence of two duties: a duty to recognize that a player has suffered a concussion, and a duty to appropriately manage such concussions. This is borne out by the discussion in Section III.B.1 of the plaintiff's opposition to the defendant's motion to dismiss.

There are fundamental problems with both of these purported duties, the most

obvious of which is that they impose on the defendant the obligation to act as a health care provider, requiring the agents of this sports organization to make the determination that a player has suffered a concussion – which the plaintiff herself admits "can be difficult" even for a physician (First Amended Complaint, paragraph 1) – and then to determine both the appropriate care for that concussion and when the player has sufficiently recovered from the concussion to be able to resume playing.  The plaintiff has not pointed the Court, either in the First Amended Complaint or in her opposition to the defendant's motion to dismiss, to any California law that would impose such a duty on a non-health care provider such as this defendant.

Another fundamental problem with the second of these purported duties, at least as regards this case, is that it presumes that the defendant's agents knew or should have known that plaintiff H.C. had in fact suffered a concussion.  While the plaintiff repeatedly asserts in her complaint and in her opposition that she did suffer a concussion, at no point does she claim that anyone associated with the defendant knew that.  The plaintiff's own allegations indicate just the opposite.

After the plaintiff was struck in the face, she swam to the side of the pool and spoke with her coach, who "asked her a couple of questions."  The plaintiff "told her coach that she wanted to return to play".  First Amended Complaint, paragraph 29.  Even the plaintiff acknowledges that the defendant's "Code of Conduct contains a provision prohibiting athletes, coaches, and referees from 'encouraging an athlete to return to play pre-maturely following a serious injury (e.g., a concussion) and without the clearance of a medical professional'" – First Amended Complaint, paragraph 152 – and there is no allegation that the plaintiff's coach, or anyone else, violated this provision.[*]

---

[*]   As noted in defendant's motion to dismiss, defendant's Rules Governing Coaches' Conduct actually prohibit coaches from **permitting** an injured athlete from

This distinguishes the present case from that of *Wattenbarger v. Cincinnati Reds, Inc.,* 28 Cal.App.4th 746 (1994).  The reason the California Court of Appeal in that case did not apply the primary assumption of risk doctrine was because the defendant's agents essentially told the plaintiff (either explicitly or implicitly) to continue pitching despite being aware that the plaintiff had suffered an injury to his pitching arm.  *Id.* at 753-754.  There is no such allegation here.

The plaintiff here will argue that the defendant should have known that she had suffered a concussion, and the fact that it didn't constitutes actionable negligence.  But that argument goes to the first of the two duties that the plaintiff is asserting, the duty to recognize that plaintiff had suffered a concussion.  But no such duty exists in California law, as the plaintiff's own arguments make clear.

In challenging the defendant's contention "that its current rules regarding stoppage of play and substitution are sufficient", the plaintiff asserts, among other things, that "the referee making a determination as to whether to stop play is insufficient because the referee lacks training in the recognition, diagnoses, or treatment of concussions" and that "referees and coaches are unable to prohibit a previously concussed player from returning too soon because they lack proper training in the recognition, diagnoses, or treatment of concussions".  Opposition, page 19, lines 9-11, 13-16.  But the training required to recognize, diagnose, and treat concussions is medical training, and the defendant is not a health care provider.  Also, defendant's existing rules do not require referees or coaches to conclude that an athlete has suffered a concussion in order to preclude the athlete from further participation – the rules require that coaches preclude an athlete from returning to play following any serious injury, which would include a significant head trauma,

---

returning to play following a concussion without medical clearance, not merely refraining from encourage a premature return to play.  Motion at 16:9-13; *see also,* Request for Judicial Notice in Support of Motion to Dismiss First Amended Class Action Complaint (Docket No. 47 at Ex. 3, p. 2, ¶ 2(b)) (emphasis added).

6
**REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

whether or not a concussion resulted. The plaintiff has failed to explain how the duties of a health care provider can be imposed on a sports organization such as the defendant.

Even if this sort of duty could be imposed on the defendant, the changes in the rules needed to accomplish this would fundamentally change the nature of the sport, and thus are not required pursuant to the primary assumption of risk doctrine.

The plaintiff complains that the three-minute stoppage of play currently permitted under the defendant's rules "is an insufficient amount of time to evaluate a suspected concussion". Opposition, page 19, lines 12-13. That certainly seems true if the defendant is to be required to implement the sort of evaluative procedure demanded by the plaintiff, which would involve first "looking into the eyes of the player and asking a series of questions" – Opposition, paragraph 74 – then moving on

> "to other cognitive tests. One is to give them six digits which they are first asked to repeat, then prompted to repeat them backwards. A simple balance test: can the player stand firm with their feet together, in heel-to-toe tandem position, and on one foot, eyes open and then closed; with hands on hips, eyes open and then closed?"

First Amended Complaint, paragraph 76.

Under the plaintiff's proposals, this sort of lengthy stoppage of play would be required any time there was an impact to a player's head. Even the Zurich Protocols on which the plaintiff places so much reliance do not demand such a disruptive change in the rules of the sport.

> "[R]ule changes may also be needed in some sports to allow an effective off-field medical assessment to occur without compromising the athlete's welfare, *affecting the flow of the game* or unduly penalising the player's team."

First Amended Complaint, paragraph 88; emphasis added. See also paragraph 89.

The plaintiff's own description of the sort of changes she wants to the sport would amount to an alteration of "the fundamental nature of the activity", *Nalwa v. Cedar Fair, L.P.,* 55 Cal.4th 1148, 1156 (2012), and thus, pursuant to the primary

assumption of risk doctrine, is not a duty that can be imposed on the defendant.

None of the cases cited by the plaintiff support her claim that she has adequately stated a claim for negligence, i.e. one that is not barred by the primary assumption of risk doctrine. In *Kahn v. East Side Union High School Dist.,* 31 Cal.4th 990, 996-997 (2003), cited by the plaintiff at page 14 of her Opposition, the Supreme Court declined to apply the primary assumption of risk doctrine because there was evidence that the actions of the coach "fell totally outside the range of ordinary activity involved in teaching or coaching this sport". Here the plaintiff is alleging that the coach's actions were in fact typical of the current standards in the sport; it is those standards that the plaintiff wants changed. So *Kahn* has no application to the current case.

On page 17 of her Opposition, the plaintiff cites to an unpublished document from a case out of the Western District of Pennsylvania: *Onyshko v. National Collegiate Athletic Association,* No. 13-cv-01791, ECF No. 11 at 13 (W.D. Pa. May 28, 2014) (copy attached as Exhibit A). But what the plaintiff doesn't mention is that she is citing to a recommendation written by the magistrate, which recommendation was objected to and never adopted by the District Court. (See copy of the court's docket attached as Exhibit B.) Also, the decision in that case was based on Pennsylvania's version of the primary assumption of risk doctrine, which applies only when the plaintiff "deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury". Exhibit A at page 12. In California, all that is required for the doctrine to apply is that the plaintiff chose to voluntarily participate in the activity. *Nalwa, supra,* 55 Cal.4th at 1156.

Also at page 17 of her opposition, the plaintiff cites to *Saffro v. Elite Racing, Inc.,* 98 Cal.App.4th 173 (2002), but as the California Supreme Court has explained, the reason the primary assumption of risk doctrine did not apply in that case was because it involved a failure "to provide routine safety measures"; specifically,

8
REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  "promised adequate water and electrolytic fluids along course". *Nalwa, supra,* 55 Cal.4th at 1163 and footnote 7.

The plaintiff will assert that what she is asking for is "routine", but her own allegations prove the opposite, since she claims these steps are not being taken at all by the defendant. She does assert that "numerous sports leagues have implemented proper concussion rules and policies and yet, these sports have not ceased to exist, nor have the changes altered the game in any way." Opposition, page 20, lines 7-9. But the plaintiff has not identified anywhere in her complaint or in her opposition to the defendant's motion to dismiss a single sports league or organization anywhere in the world that has adopted the Zurich Protocols. So the plaintiff certainly has not set out sufficient facts to show that the defendant failed to put in place "routine" safety measures.

On page 17 of her Opposition, the plaintiff cites to *Morgan v. Fuji Country USA, Inc.,* 34 Cal.App.4th 127 (1995). But the claim in that case was that the "golf course hole was designed in an unusually dangerous manner", which allegation "was supported by circumstantial evidence showing that other golfers had been repeatedly struck by golf balls at the same location." *Beninati v. Black Rock City, LLC,* 175 Cal.App.4th 650, 661 (2009). This has nothing to do with the claim at issue here.

The bottom line here is that the plaintiff wants to impose an unprecedented duty on the defendant – to identify whenever a member athlete has suffered a concussion and to supplant the judgment of that athlete's health care provider with a set of mandatory return to play protocols– and to drastically change the rules of the sport to enable the defendant to fulfill these newly created duties. There simply is no basis for this, and accordingly the defendant's motion to dismiss the first count of the First Amended Complaint should be granted.

9
**REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

### 4. **THE PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANT SPECIFICALLY ASSUMED THE DUTY IDENTIFIED BY THE PLAINTIFF, AND ACCORDINGLY THE SECOND COUNT OF THE FIRST AMENDED COMPLAINT MUST FAIL**

The plaintiff argues in her Opposition that because "USA Water Polo has [alle-gedly] undertaken broad responsibility in setting and enforcing the rules of water polo", it has "thus assumed a duty toward Plaintiff and the Class to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players". Opposition, page 22, lines 21-22, page 23, lines 2-4. But the plaintiff has ignored the explicit holding of the California Supreme Court, cited in the defendant's moving papers (at pages 16-17), that "in order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully." *Artiglio v. Corning Inc.,* 18 Cal.4th 604, 614-615 (1998).

There is no allegation in the First Amended Complaint that USA Water Polo "specifically" assumed a duty "to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players", and the plaintiff's opposition makes clear that the plaintiff is essentially arguing that the defendant implicitly "assumed" such a duty. That simply is not consistent with California law, and thus is fatal to the second count of the plaintiff's First Amended Complaint.

### 5. **THE PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANT'S ALLEGEDLY MISCONDUCT RISES TO THE LEVEL OF GROSS NEGLIGENCE**

The plaintiff argues in her Opposition that the defendant can be held liable for gross negligence because of its alleged "failure to implement or enforce the international consensus standards represents 'an extreme departure from the

ordinary standard of conduct.'" Opposition, page 25, lines 15-17. But the supposed fact that "consensus ha[s] been reached in the *medical and scientific* community for the cornerstones of the management and treatment of concussions" – Opposition, page 24, lines 16-18 – does not mean that there is a consensus in the sports community to supplant the judgment of physicians in individual cases with a requirement that those alleged international standards be implemented in every case. The plaintiff does not make such an allegation, and other than alleging – without a single supporting fact – that "numerous sports leagues have implemented proper concussion rules and policies" – Opposition, page 20, lines 8-9 – she has not made any sort of showing that mandatory compliance with the Zurich Protocols is now the standard in the athletic community. (The fact that plaintiff's counsel in recent years has sued both the NCAA and various soccer organizations regarding their alleged failure to implement these same concussion policies would strongly indicate that implementation of these policies is **not** currently standard practice.) The plaintiff has thus failed to show that the defendant's actions amounted to any sort of departure from the existing standard of care in the industry, much less an extreme departure.

Plaintiff's citation to the Eastern District case of *Lewis v. Mammoth Mt. Ski Area,* 2009 U.S. Dist. LEXIS 13050, 2009 WL 426595 (E.D. Cal. Feb. 19, 2009) doesn't help the plaintiff, given her own description of the events that occurred in that case. Specifically, there was evidence that the defendant's employee deliberately led the plaintiff into terrain that caused her snowmobile to go airborne, in violation of the defendant's own safety rules. That is the sort of reckless disregard of known risks that supports a claim of gross negligence. There is nothing even remotely similar here, and accordingly the third count of the plaintiff's First Amended Complaint should be dismissed.

**6.    CONCLUSION**

For all of these reasons, the defendant's motion to dismiss should be granted

11
REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

as prayed.

Dated: August 31, 2015 Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ *Steven J. Renick*
JEFFREY M. LENKOV
STEVEN J. RENICK
STEVEN C. AMUNDSON
Attorneys for Defendant
USA WATER POLO, INC.